Good morning. First I want to thank the court for moving us to last. These are uncomfortable matters to talk about and I'm glad we don't have an enormous audience for it. I'd like to make two points this morning. The first being that not every photograph taken during sex with a minor is punishable under section 2251 and the second that the government failed to present adequate circumstantial evidence that a palant engaged in sex with the purpose of creating pornography. As to the first point I would like to suggest an analogy. Some people make a reservation at a restaurant intending to order, eat and enjoy the food. With that intent they go to the restaurant, they order the food. When the food arrives at the table it's beautifully presented and the diner pulls out his or her cell phone and snaps a picture and proceeds to eat and enjoy the food. That person did not order the food with the intent of photographing it, although photographing it might have in some way enhanced the enjoyment of it. Other people actually do make a reservation and order the food with the intent to photograph the food. In that case there's circumstantial evidence of the person's intent. He or she is a food photographer or tells their dining companion that they want to replicate this recipe or wants to impress people on social media that they're eating at trendy, fancy restaurants. In this case that kind of circumstantial evidence is absent. Most importantly there's not one shred of evidence exactly when and under what certain circumstances the photographs were taken. The photographs were certainly taken during the sexual encounter, but there is no evidence about whether it was at the beginning of the sexual encounter, the middle or the end. The government chose not to elicit the contextual facts from the minor and only the ability to infer the forbidden purpose. Well, the government makes the argument... Let's put aside what the government says. What do you say? What I say is the photographs were made, there was one incident, there was one encounter, there were not three separate incidents, there was one encounter during which photographs were taken. We don't know any of the circumstances of that. We don't... There's no evidence that there were instructions given that the action was paused in order to set up a camera. There's none of that circumstantial evidence that you see in the other cases cited in our brief and the government's brief. But there is circumstantial evidence. This is not of a type that the other cases talk about, but this is a circumstantial evidence case, right? You're saying it's weak circumstantial evidence. Well, the only evidence is the picture itself, and I'm saying the picture itself, snapping the photograph itself, is not enough evidence. It's not sufficient to show that he engaged in the sexual conduct with the intent to photograph it, to create pornography. There has to be something else besides the taking of the photographs. The nature of the photograph is... I mean, we wouldn't be here if it weren't pornography. It's got to be pornography to even be here. So let me restate that. Snapping a photograph of a minor that's sexual in nature is not, by itself, does not satisfy the statute. There has to be evidence of the defendant's specific intent, that he engaged in the sexual conduct with the specific intent. Sex has to be the root to the picture, right? Not the thing itself. There has to be sexual conduct. The Supreme Court in Mortenson is dominant purpose. Yes, there has to be sexual conduct for the purpose of taking a picture. So sexual conduct in which a picture is taken is not necessarily enough. You have to show the specific intent that he engaged in this conduct with the specific intent to take a picture. Ms. Rowland, if you... I'm just thinking about the facts here, and one of the photographs does seem to lend itself particularly strongly to the prosecution's theory. If I were in, just to take your analogy, if I were in a restaurant and food came, and the question was, you know, did I prominently display food for the purpose of taking a picture? It comes, it looks great, and I pick up my salad to make it more in the light, and I snap a picture. Have I prominently displayed my salad for the purpose of taking a picture? And I think the answer in this that you can form an intent in the middle of your dinner when the food arrives, and you ask your friend to please shine your flashlight from your cell phone so I have better lighting, and you do all of that, then now you do have a specific intent to take a photograph. But there's no evidence of that here. Isn't there? No, there really isn't, and there's no evidence of when that photograph was taken. So, for example, I mean, really, the questioning of J.A. was so minimal. It really was, was your penis in his mouth? Was his penis in your anus? That's pretty much it. So there's no testimony about whether, if he had just been conducting, performing oral sex on J.A., and then snapped the photograph in which he's holding J.A.'s penis, isn't necessarily sort of, you know, extra, something extra bringing it into focus. It's simply, I mean, the government tries to divide these into separate incidents. It's one sexual encounter in which there are multiple ways of touching. If the oral sex is first, in which presumably he is also touching J.A.'s penis with his hand, and then snaps a photograph, then no, that isn't holding your salad up to the light or asking your friend to create better light. But there's no, there's absolutely no detail here. There's no testimony about the order that it happened, the between the oral sex and the photograph was one second, one minute. There are no instructions to, you know, regarding posing the defendant. It's a little odd in the, to read purpose that way, given that the pornography statute would apply if, on your hypothesis, the photograph were not followed by oral sex, but it would not apply if it were followed by oral sex. In other words, you say it doesn't apply in this circumstance because the purpose was really to have the sex, to have the penetration or the oral sex. And yet, if all that happened were they come in the room, dah, dah, dah, dah, everything up to or but the oral sex on your hypothesized facts, then there would be a purpose. Well, no, because really my argument is we don't know because they didn't put in any evidence and that was their burden. We don't know from the trial testimony. And you're just saying the purpose might have in fact been different, and that's why those two cases would be treated differently. Right. It was truly, absolutely bare bones. At the trial, defense counsel assumed for some reason that the photographs came afterwards, but there's no evidence of that at all. And in fact, the court also made that assumption and ruled that Mr. Torres directed the victim to lie in the bed in a certain posture for which there's no evidence, held out his own hand to stimulate the victim's penis for the camera for which there's no evidence. The photos were not taken during the first two alleged sexual acts for which there is no evidence. Defense counsel did also make a general Rule 29 motion. So regardless of whether he was arguing the photographs came afterwards for our purposes here. I also would like to make the point, well, a couple of points. One is that the photographs, which I actually would urge the court to look at, are really, there are four photographs. Three of them are virtually identical. And then there's one where the defendant allegedly is holding J.A.'s penis. And I make that point to say this is not, you know, different poses. It's all the What does it mean to engage in sex for the purpose of taking a picture? If every picture snapped during a sexual encounter with a minor is a violation of the statute, then really, I think we know from what we read in the newspapers that millions of teenagers who are engaged in having sex with each other for no other purpose than engaging in sex with each other and snap a picture can be the statute. This is to punish people who are trying to create child pornography. And there's no evidence that that is what Mr. Torres was trying to do here. Thank you very much. I'm just trying to understand what the millions of teenagers are taking pictures of. Well, they're taking pictures of everything in their lives, including their sexual encounters. With one another? With one another, yes. No one reads the paper. Good morning, Your Honors. May it please the Court, Belinda Jones for the United States. Counsel says that the sequence of events in this case matters, but it doesn't. The basis for the child pornography charge was the lascivious display of genitalia, and that's what we argued in the MJOA argument. That's what we argued to the jury. And what the boy testified to was that an appellant enticed him into his parents' bedroom, an appellant took off the boy's clothes, an appellant directed the boy to lie down on the bed. And it is true that the testimony at trial was ambiguous about exactly what happened next because it was extremely difficult for the boy to testify about these circumstances. But it's clear both from the content of the photographs and from the boy's testimony that what was occurring at the time the photographs were being taken was that he was in a position of posture of lascivious display of his genitalia. And the government, as we offered in our brief, we are happy to provide the photographs to the Court for its review under appropriate protected circumstances. But the boy is fully spread across the bed. His legs are apart. His erect penis is very prominent. The focus of all four of these photographs in this proof shows appellant's hand. The boy identified appellant's arm and hand. It shows his hand sort of positioning the boy's penis as the photograph is a closer look. If you can imagine, if you have a friend who's a gardener, the gesture that you see is what your friend might use to pull closer the And we think that... Yes, Your Honor. I mean, what you do is disaggregate the sexual encounter into the moment where a picture is taken. And when you do that, it's possible. I'm not sure if it works even with that. But the disaggregated moment, it's much easier to find the purpose of that to be taken in the picture than the sexual encounter. Well, Your Honor, there are... That seems to me a distortion of any notion of what this statute is about. Well, Your Honor, you'll see in other cases where the courts find that the purpose of the sexual encounter, when it was actually an act between, a mutual act between the individuals, find that the purpose was also to take these photographs, they will note that there was a pause in the action, so to speak. So let's pause it. Let's pause it, the chain of events that counsel has suggested. So then we would be able to argue. Let's say the oral act occurred and then the photographing. So the government would then argue appropriately that appellant induced the boy to go into the bedroom. Appellant took the boy's clothes off. Appellant directed him to lie down on the bed. Appellant engaged in oral sex in order to stimulate the boy, which resulted in the erect penis, which enabled appellant to take the series of photographs of that genitalia. But it would seem miraculous that you take the sex out of sexual encounters. No, Your Honor. I'm trying to say the sexual purpose. Your Honor, what we're saying and what the cases clearly say and what appellant concedes is that the taking of the photograph doesn't have to be the sole purpose. Well, but I notice that nobody in this case cites what appears to be the leading Supreme Court case on interpreting comparable language, which is Mortenson, the 1944 case, where you have language saying anyone who knows that this is the Mann Act knowingly transports an interstate commerce, a woman or girl, for the purpose of prostitution, etc., with the intent and purpose to induce child abuse, prostitution, and so forth. And the Supreme Court says the intention to have the girls engaging in conduct must be the dominant motive of such interstate movement. You and the counsel on the other side disregard and pay no attention to that, as I think has been true of most of the circuit courts addressing this issue. I believe there are some courts that have addressed the two together, but I acknowledge I did not focus on that. Your Honor, and the government would be happy to address that in a post-argument submission if the court would be interested in that. But I think we have to note as well that these are distinct pieces of legislation, that the courts have recognized that Congress has said that there's such an overwhelming interest in discouraging the use of children and committing sexual acts against children and using them to produce pornographic images, that this particular statute needs to be interpreted broadly. So we think that at least there's a current distinction. Because it's a strong purpose to remove lenity, it's out, and also close attention to the language is out. Well, the language of the statute refers to the purpose, Your Honor. It doesn't say dominant at all. And none of the courts... Well, Steve, I mean, when you think of a... I mean, this is a spin on the restaurant metaphor. What I thought of was a couple who goes abroad for a vacation. They go to some beautiful places and they take some pictures there. And suppose that in one of the pictures, one of the partners gestures to some particularly beautiful aspect of the scenery. They went abroad to take the picture for the purpose of taking the picture. Your Honor, there are other elements in this case. That's just one factor that's important to this analysis. But there are other elements in this case that are comparable to cases in other circuits. We cite more law... I understand that. I have to say I've read those cases, and I found them confused in almost every respect. Self-contradictory, paying little attention to the language, little or no attention. Well, Your Honor, Appellant's argument seems to suggest that the only way the government could prove the necessary purpose here is if we had direct evidence, perhaps from his mouth. I don't think they're saying that. They're saying you need much better circumstantial evidence. The better circumstantial evidence here, we're not sure what exactly that would be because we would argue that even if you assume that one of the sex acts occurred before, or even both, as defense counsel argued below and as the court assumed below, both acts occur before the photography occurs, we would say that there was a break in the chain of action because, as I noted in one of my footnotes, if that's the chronology, then Appellant had to pause because the anal act at least required him to be partially disrobed. The boy testified, and it's undisputed, that Appellant was clothed, fully clothed, when he took the photographs. So he had to have paused, redressed himself, reached for his phone to use it as a camera. There's a break in the action here. It's not part of the sexual encounter. You spoke of the purpose of the statute should be construed broadly to root out child pornography. What do you do with Ms. Rowland's point that your reading of the statute will capture far more activity than what we traditionally think of as child pornography? Teenagers. When she talked about the prevalence of teenagers using telephones while engaged in sexual activity. Your Honor, that is the literal reading of the statute, and it's, I think, a little more difficult, and the cases have kind of addressed that. The cases say when there is actual mutual sexual activity occurring at the time the photographs are taking, and there may be momentary differences here. When there's mutual sexual acts occurring between the two parties, then it is a little more difficult to tease out the particular purposes and motives of engaging in that act because when you're engaging in that act, it's more likely you're doing it for other purposes. Your own satisfaction, expressing your affection for the other person. Those are the arguments made. But here, we had at a minimum, we had a pause in that kind of action, and then we have what is a lascivious display of the genitalia. It doesn't almost necessarily have to be some sort of pause. I mean, I don't know about how things happen these days, but I would think to take a picture involves some interruption of an ordinary sexual encounter. No? Not the kind of interruption. Some people. Not necessarily the kind of interruption that we are talking about would have had to have occurred here because, again, accepting the chronology that's been posited or that the court accepted below, at least he had to redress himself. I don't follow that. I mean, to me, the evidence does not pin down the chronology. And the way that I think is most challenging for the government to view it is the defendant entices the boy into the room. There's oral sex. There's a photograph. There's undressing. There's further. There's anal sex. And that is the whole objective there, arguably, is for a purpose of having the sex and it violates the D.C. criminal code. But the issue here is this pornography charge is a much longer sentence, and is this act for the purpose of it? Well, Your Honor, Congress certainly is well aware. We can assume that Congress is aware of the way the courts have interpreted this statute. And the courts have not held that. Maybe Congress looked at the Supreme Court. I would assume that Congress is aware of that as well. And yet the concern that you're expressing would appear to be one that the statute needs to be addressed, not one where the decisions of the other courts, finding that the language of the statute permits these prosecutions, that the circumstantial evidence is sufficient. Because those courts will find that these prosecutions are appropriate in certain circumstances, even when there isn't as appropriate. Circumstantial versus direct seems to me to have nothing to do with it. There's almost never going to be a case where the defendant says, I did all this for the purpose of taking a picture, right? That's not going to happen. There are certain cases where there is evidence that the perpetrator invited the child over to his house saying, I'd like to take some pictures of us doing things. We do have those cases. That's pretty close to my hypothetical. That's going to be very, very rare. It is going to be, yes, absolutely. And you're asking for an interpretation of the statute that sweeps miles beyond that. Well, Your Honor, the kinds of circumstantial, we can't imagine what other kinds of circumstantial evidence we can come up with short of a direct statement like that from the defendant. Well, there seem to be cases for this elaborate photographic equipment, right? Which seems to me to suggest that the dominant purpose or even a dominant purpose is likely to be taking pictures. Yes, Your Honor, but I think we also now have to recognize that what occurred in this case is people don't set up or need to set up cameras like that because we are all probably carrying around our cameras with our cell phones. And so recognizing that change in the technology, just because the technology has advanced, doesn't mean that there aren't other pieces of evidence in the record to allow us to conclude that a dominant or a purpose of doing this... What the change in technology means is that a very minor purpose can be fulfilled in the course of that relationship without much effort and without it being at all preeminent among the purposes of the perpetrator. Yes, Your Honor, but again, we think that in this particular case, and regardless of the order or the sequence of the acts, in this particular case, we have enough of the factors to allow a reasonable juror to conclude that a motive, a dominant purpose of this overall encounter was to enable the taking of these photographs. Otherwise, why would he have paused to take the photographs? It required some time to do so. If this is really an encounter that is primarily to engage in sexual activity between the two individuals, why would there have been a pause at all? Or why would he have performed the oral sex, then stopped, taken the pictures, then performed the anal sex, or had the boy perform the anal sex on him? I mean, there is significance in the fact that the actual mutual activity had to stop in order for these photographs to be taken. And I'm sorry, I believe that my time has expired, but I would be happy to answer additional questions if there are any. No, thank you very much. Otherwise, we would like the Court to affirm. We'll give you one minute, Ms. Roth. It's no excuse to say that it was difficult for the boy to testify, and that's why we didn't pull out a full story from him. In terms of the government's argument that perhaps there was a break in the chain of action when the defendant had to become at least partially undressed in order for the anal sex to happen, well, my first point is there's no evidence about the chain of events and the sequence of events. And the second is the government knows that that is not the sequence of events because they have the boy's grand jury testimony. So I think it's disingenuous to argue a particular sequence of events that they know didn't happen. If there are no further questions, we'll rest. The case is submitted.
judges: Griffith, Pillard, Williams